[Civ. No. 6816. Second Appellate District, Division One.—November 24, 1931.]

HAZEL COURDWAY, Respondent, v. PEOPLES MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA (a Corporation), Appellant.

Joe Crider, Jr., Clarence B. Runkle and Alfred B. Weiler for Appellant.

L. G. Shelton for Respondent.

YORK, J.—On July 26, 1927, Dr. J. W. Courdway of Pomona, California, made application to C. C. Likes, an agent of the defendant insurance company, for a policy of accident and health insurance, naming the plaintiff, Hazel Courdway, his wife, as beneficiary, and gave to the said agent his check dated August 1, 1927, for the sum of $36.50 in full payment of the initial quarterly premium on said policy. The agent thereupon delivered the application to the insurance company at its office in Los Angeles, paying to said company $9.13, which was the net amount of the initial payment due to appellant after the deduction of the agent's commission, and at the same time requested that the policy be mailed to him, the said agent, when executed. The policy was duly executed and countersigned by the appellant on July 28, 1927, the office record of the appellant showing that it was on that day mailed to the agent Likes. The insured was injured in an automobile accident on July 31, 1927, and as a result died from injuries therein sustained, on the morning of August 1, 1927. On that morning, shortly after the death of insured, a young man—one L. E. Coffman—called upon the plaintiff and delivered to her the insurance policy here involved, after demanding of her the payment of $61.03, which sum of money she

paid to him. The said L. E. Coffman is apparently unknown to any of the interested parties, and how he came into possession of the policy of insurance remains a mystery, so far as the evidence discloses.

Plaintiff made proof of loss and application for indemnity under the policy, but the appellant company refused to honor her claim, and she brought this action to enforce the same.

It was stipulated in the lower court, during course of trial, that the only issue was the question of delivery of the insurance policy. Appellant now claims that the plaintiff by paying Coffman, in order to secure possession of the policy, is guilty of fraud as against the insurance company; that the policy was never effective, because the initial premium was not paid, and that the policy was never delivered.

Appellant's first point, that of fraud on the part of plaintiff, is without merit. The evidence shows that the plaintiff told Mr. Coffman, when he appeared with the insurance policy, that her husband was dead, but that he replied it made no difference, and that he would deliver the policy to her if she would pay him $61.03, the premium due thereon. The evidence further shows that she knew none of the details of her husband's transaction with the insurance company or the agent Likes.

As to payment of the premium, the deceased gave the agent a post-dated check, but the agent, before the date when the check could be honored, paid to the appellant company the sum of $9.13, which was the net amount of the initial premium due upon the policy, after deduction of the agent's commission, so that, as between the appellant and the insured, the question of payment did not arise. The application for insurance, of which a photostatic copy was attached to the policy, contained the following statement: "25. The initial or down payment on this policy has been paid in amount of $36.50 on the 26 day of July, 1927." The insurance policy, which was issued by appellant company on the twenty-eighth day of July, 1927, contained the following: "This Policy is issued in consideration of the Application, copy of which is attached hereto and made a part hereof, payment of a policy fee of Ten and no/100 Dollars and payment of a premium of Twenty-six & 50/100 Dollars

for a term of Three months beginning on the 28th day of July, 1927, and expiring on the 28th day of October, 1927, at 12 o'clock noon.'' ''An acknowledgment in a policy of the receipt of premium is conclusive evidence of its payment, so far as to make the policy binding, notwithstanding any stipulation therein that it shall not be binding until the premium is actually paid.'' (Sec. 2598, Civ. Code.) It would seem, therefore, that appellant, having received from the agent the entire sum it was entitled to before issuance of the policy, is not now in position to raise the question of nonpayment.

█ The delivery of the policy was accomplished by the act of sending it to the agent for delivery to the assured. (*Harrigan* v. *Home Life Ins. Co.*, 128 Cal. 531, pp. 543 to 546 [58 Pac. 180, 61 Pac. 99].) The delivery by the unauthorized person, Coffman, to Mrs. Courdway, really has no relation to this controversy. Upon the authority of *Marderosian* v. *National Casualty Co.*, 93 Cal. App. 295, 303 [273 Pac. 1093, 1096], we hold that the policy of insurance was delivered and became effective upon the date of the application. The cited case holds: ''Where a valid parol contract of insurance has been entered into, the policy to be issued thereon is simply the memorial of the prior parol contract, and even though the policy be not delivered until after the loss occurs, the insurance is deemed effective from the time agreed upon in the parol agreement, irrespective of any delivery of the policy (*Crawford* v. *Trans-Atlantic Fire Ins. Co.*, 125 Cal. 609 [58 Pac. 177]). 'If an agent, authorized to accept risks, accepts a risk by parol, promising to deliver the policy, the insurance begins with the acceptance, and the contract in parol continues until the policy is delivered, when it is superseded by the policy' (*Ferrar* v. *Western Assur. Co.*, 30 Cal. App. 491 [159 Pac. 609, 611]).''

The judgment is therefore affirmed.

Conrey, P. J., and Houser, J., concurred.